# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **AISHA RILEY, on behalf of herself and all others similarly situated,** Plaintiff, | § § § § | |
| **vs.** | § § | **CIVIL ACTION** _____ |
| **HOUSTON NORTHWEST OPERATING COMPANY, L.L.C., a Texas Limited Liability Company d/b/a "HCA Houston Healthcare Northwest" and "Houston Northwest Medical Center"; and GULF COAST DIVISION, INC., a Texas Corporation, d/b/a "HCA Houston Healthcare,"** Defendants. | § § § § § § § § § § § | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

### I. INTRODUCTION

1.1    Plaintiff Aisha Riley ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against Defendants Houston Northwest Operating Company, L.L.C., and Gulf Coast Division, Inc. ("Defendants"), challenging Defendants' unfair, false, misleading and deceptive practice of charging their emergency care patients a substantial but undisclosed emergency fee purportedly to cover the overhead costs of operating their emergency care facilities (hereinafter, "Overhead Charge"), which is added to an emergency care patient's bill on top of the charges for the individual items of treatment and services provided. Although advance knowledge and disclosure of this Overhead Charge, which is essentially a "cover charge" or "surcharge" for being seen at Defendants' emergency room facilities, would be a substantial factor in a patient's decision to seek emergency care from Defendants, it is

effectively hidden from Defendants' emergency room patients.

1.2    Using the brand name "HCA Houston Healthcare," Defendants operate approximately 12 hospitals with emergency departments under this brand in the state of Texas. This complaint applies to patients who received treatment at any of these emergency departments and who were billed an Overhead Charge.  By this complaint, Plaintiff seeks declaratory and injunctive relief on the basis that these undisclosed Overhead Charges were unauthorized by contract and unconscionable.

## II. PARTIES

2.1    Plaintiff Aisha Riley, a Texas citizen and resident of Harris County, was admitted to, treated at, and released from Houston Northwest Medical Center, one of Defendants' hospitals, located in Houston, Texas.

2.2    Defendant HCA Houston Healthcare is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas, that owns, operates and/or provides management and billing services to approximately 12 hospitals with emergency department facilities in Texas (referred to herein as "HCA Houston Hospitals"), including Houston Northwest Medical Center. "HCA Houston Healthcare" is named as a defendant herein pursuant to the provisions of Rule 17 of the Federal Rules of Civil Procedure. Plaintiff is informed and believes that "HCA Houston Healthcare" is an assumed name of Gulf Coast Division, Inc., a Texas corporation, but specifically invokes her right to institute suit against whatever entity was conducting business using the assumed or common name of "HCA Houston Healthcare" with regard to the events hereinafter described. Plaintiff specifically invokes her right under Rule 17 to have the true name of this party substituted at a later time if necessary. **Defendant HCA Houston Healthcare may be served with process**

**by serving its registered agent: CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.**

2.3    Defendant Houston Northwest Operating Company, L.L.C. is a Limited Liability Company organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas, that owns, operates and/or provides management and billing services to one or more hospitals in Texas, including Houston Northwest Medical Center (referred to herein as "Hospital"). "Houston Northwest Medical Center" is named as a defendant herein pursuant to the provisions of Federal Rule of Civil Procedure 17. Plaintiff is informed and believes that "Houston Northwest Medical Center" is an assumed name of Houston Northwest Operating Company, L.L.C. but specifically invokes her right to institute suit against whatever entity was conducting business using the assumed or common name of "Houston Northwest Medical Center" with regard to the events hereinafter described. Plaintiff specifically invokes her right under Federal Rule of Civil Procedure 17 to have the true name of this party substituted at a later time if necessary. **Defendant Houston Northwest Medical Center may be served with process by serving its registered agent: CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.**

### III. JURISDICTION AND VENUE

3.1    This Court has jurisdiction pursuant to 28 U.S.C. 1332. Although Plaintiff is a citizen of Texas, Plaintiff believes that at least one other member of the class of plaintiffs in this class action case is a citizen of a state different from Defendants, which are Texas corporations and/or Texas LLCs and have their principal places of business in Texas, and that the amount in controversy exceeds $5 million. Financial and usage figures reported by Defendants for Houston Northwest Medical Center to governmental

authorities show estimates of 27,200 Emergency Room visits where the patient was seen in the emergency room and not admitted to the hospital, and 15,800 emergency room visits where the patient was seen in the emergency room and admitted to the hospital. Financial and usage figures reported by HCA Houston Healthcare for only one of its emergency facilities in Texas likewise reflect tens of thousands of emergency room patient visits for just one of Defendants' hospitals during a single year. Because the fees in question in this case range from $623.00 to $3,525.00 per visit, it is a mathematical certainty that the amount in controversy will exceed $5 million and that at least one of thousands of patients will be a citizen of a state different than Texas.

3.2     Venue is proper in the Southern District of Texas because each Defendants' principal offices in this State is in Harris County, because the contract was to be performed in whole or in part in Harris County, and/or because a substantial part of the events or omissions giving rise to the claims herein occurred in Harris County.

## IV. FACTS

### A.     AGENCY ALLEGATIONS

4.1     Plaintiff is informed, believes and alleges that in committing the acts alleged herein each named Defendant is and was the agent of the other named Defendants and acted with the knowledge, consent, permission, cooperation and authorization of the other named Defendants.

4.2     Plaintiff is informed, believes and alleges that Defendants exercise control over their agent hospitals by developing and controlling their internal policies relating to pricing, billing and collection practices.

4.3     Plaintiff is informed, believes and alleges that at Defendants' direction and with Defendants' approval each HCA Houston Hospital represents itself as being part of

the HCA Houston Healthcare system by using HCA Houston in its name and/or identifying itself as part of the HCA Houston Healthcare system.

4.4     At all relevant times each and every individual facility included in this case was and is the agent of Defendants.  In committing the acts alleged herein each and every hospital facility acted in the course and scope of its agency and was acting with the consent, permission, authorization, satisfaction and knowledge of Defendants and perpetrated and/or aided and abetted the wrongdoings described herein.  Plaintiff is informed, believes and alleges that all actions of each of Defendants' facilities were ratified and approved by Defendants or their officers, directors, controlling persons, agents, partners, or joint venturers.

## B.     GENERAL ALLEGATIONS

4.5     Plaintiff is informed and believes and thereon alleges that at all relevant times, all HCA Houston Hospitals used a form conditions of admission form (hereinafter "Contract"), drafted by Defendants, the terms of which are not dictated by statute or otherwise, which all emergency care patients (or their agents) were presented with and requested to sign.

4.6     Plaintiff is informed and believes that Defendants' form Contract is substantially similar for all HCA Houston Hospitals in one key aspect – none of Defendants' form Contracts mention the Overhead Charge that Defendants intend to charge, and do charge, emergency room patients in addition to the charges for the specific services provided.  Further, neither the Overhead Charge nor Defendants' intention to add an Overhead Charge to an emergency patient's bill is disclosed on signage posted in or around Defendants' emergency room facilities, or disclosed verbally during the emergency room registration process.

4.7     Despite the lack of disclosure, at all relevant times, Defendants had a practice of charging emergency department patients a hidden and undisclosed Overhead Charge set at one of five levels, according to the seriousness and complexity of the patient's condition, with such level being based on a secret formula or algorithm known only to Defendants, and determined only after treatment was rendered.   This Overhead Charge was imposed in addition to the itemized charges for the individual items of treatment or service provided to the patient.  For example, the recent Overhead Charge levels for Houston Northwest Medical Center are as follows:  Level 1: $623.32; Level 2: $1152.94; Level 3: $2208.93; Level 4: $3667.90; and Level 5: $3,525.

4.8     Plaintiff is informed and believes and based thereon alleges that all of Defendants' hospitals included in this action likewise charged as Overhead Charge to their emergency department patients.

4.9     Plaintiff is informed and believes and based thereon alleges that this substantial Overhead Charge is not based on the individual items of treatment or services provided to the patient, such as X-rays, laboratory services, sterile supplies, drugs, etc.  Rather, it is as Overhead Charge charged to emergency patients simply for presenting and being seen at any one of Defendants' hospital emergency departments, and such Overhead Charge is imposed on top of the charges for specific items of treatment/services.   Further, the formula or algorithm which Defendants use to determine the level of Overhead Charge (1, 2, 3, 4 or 5) is also hidden from patients, making it virtually impossible for patients to know or seek to control the level or amount of the Overhead Charge they will be charged for their visit.  Further, in addition to not being disclosed in Defendants' Contract, the Overhead Charge is not visibly posted on signage in or around Defendants' emergency departments, where a patient would at

least have the opportunity of knowing of its existence, nor is it disclosed to patients verbally during the registration process or by other means. Thus, Defendants have failed to inform emergency care patients that they would be billed a substantial undisclosed and unmentioned Overhead Charge which is billed on top of the charges for individual items of treatment furnished to the patient, and which, if known about prior to treatment, would be a substantial factor in a patient's decision to remain at the hospital and proceed with treatment. The high cost of medical services is a matter of great public concern, and emergency care patients have a right to be informed of a substantial Overhead Charge before it is incurred. Defendants' failure to disclose their Overhead Charges contributes to a lack of pricing transparency and a lack of informed consent by emergency care patients, who are generally totally unaware of such Overhead Charges or how they are determined. Plaintiff is further informed and believes and thereon alleges that many emergency care patients, if informed of Defendants' Overhead Charges prior to their being treated, would choose to seek less costly treatment elsewhere.

4.10   Emergency patients have no reasonable opportunity to review or negotiate these Overhead Charges or to shop around before receiving care. Accordingly, these patients cannot be deemed to have agreed to pay such Overhead Charges.

4.11   Despite being entitled to charge no more than the charges for services rendered, Defendants bill this additional Overhead Charge, even though (a) this substantial Overhead Charge is not disclosed to patients in Defendants' Contract, in signage posted in or around their emergency departments, or verbally to patients at the time of registration, or by other means, (b) emergency care patients cannot reasonably be expected to be aware of this Overhead Charge, (c) Defendants are well aware that

most emergency patients are unaware of Defendants' intention to add an Overhead Charge to their bill, and (d) knowledge of the existence and amounts of this Overhead Charge would be a substantial factor in influencing a reasonable patient's decision as to whether to remain and seek treatment at a HCA Houston Hospital emergency department. The failure to disclose the Overhead Charge is particularly egregious in light of Hospital's claim to "set the standard for what you and your family should expect when visiting a hospital." Unlike a normal arms-length transaction between a buyer and seller, a patient seeking medical services at one of Defendants' emergency departments places a great degree of trust and confidence on the good intentions of the hospital to treat him or her fairly and with compassion. This trust and reliance are heightened by Defendants' Mission and Values statements which appears on its website as follows:

> In pursuit of our mission, we believe the following value statements are essential and timeless: "We recognize and affirm the unique and intrinsic worth of each individual. We treat all those we serve with compassion and kindness. We trust our colleagues as valuable members of our healthcare team and pledge to treat one another with loyalty, respect and dignity. We act with absolute honesty, integrity and fairness in the way we conduct our business and the way we live our lives. We foster a culture of inclusion and diversity across all areas of our company that embraces and enriches our workforce, physicians, patients, partners and communities."

4.12   Defendants' failure to disclose their intention to bill Plaintiff and Class members a substantial emergency department Overhead Charge is not only a failure to "act with absolute honesty, integrity and fairness" in the way they conduct their business, but constitutes actionable consumer fraud or deceit because Defendants had exclusive

knowledge that they would be billing Plaintiff and Class members such an Overhead Charge; this fact was not known or reasonably accessible to Plaintiff or Class members at the time of their emergency department visits; and/or Defendants actively concealed their intention to bill Plaintiff and Class members such an Overhead Charge by failing to mention it in Contract, in signage posted in the emergency room facilities, or verbally during the registration or by other means. A reasonable consumer would deem advance knowledge that he or she would be billed a substantial Overhead Charge to be an important factor in determining whether or not to remain and obtain treatment at the hospital, or seek less costly treatment elsewhere.

## C.     THE REPRESENTATIVE PLAINTIFF'S CLAIM

4.13    On or about December 24, 2018, Plaintiff received emergency treatment/ services at Houston Northwest Medical Center, where she was provided with and signed Defendants' form Contract. While there, Plaintiff received no notice or warning, either in Defendants' Contract, in posted signage in the emergency department, or verbally at the time of registration, or by other means, as to the substantial Overhead Charge that Defendants intended to add (and did add) to Plaintiff's bill on top of the individual charges for each item of treatment and services provided to her.

4.14    The gross amount subsequently billed for the treatment/services provided to Plaintiff by the hospital was $10,381.22, which, Plaintiff is informed and believes, included a hidden Overhead Charge of $2,208.93. This Overhead Charge was hidden by Defendants' failure to disclose the Overhead Charge prior to treatment and even on the summary billing statement subsequently sent to Plaintiff.

4.15    Plaintiff was shocked, dismayed and aggrieved when she found out that she had been charged an Overhead Charge in addition to all of the individual items of

treatment and services as a result of merely being seen in the Hospital's emergency department. Had Plaintiff been informed about the Overhead Charge prior to incurring treatment that would result in an Overhead Charge, Plaintiff would have left and sought less expensive treatment elsewhere.

## V. CLASS ACTION ALLEGATIONS

5.1     Plaintiff brings this claim for declaratory relief pursuant to Rule 23, Federal Rules of Civil Procedure and/or other applicable law, on behalf of herself and a class of all other persons similarly situated, defined as follows:

> All individuals who, within the last four years, received treatment at a Medical Center Hospital emergency department in Texas, and who were charged an emergency department charge to cover overhead expenses which was billed on top of the charges for the individual items of treatment and services provided (the "Class"). (Such overhead charges are designated with a CPT Code of 99281, 99282, 99283, 99284, or 99285.)

> Excluded from the Class are any officers or directors of Defendants, together with the legal representatives, heirs, successors, or assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.

5.2     This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, predominance, typicality, adequacy of representation, and superiority requirements. Plaintiff seeks to represent an ascertainable Class with a well-defined community of interest in the questions of law and fact involved in this matter.

5.3     The members of the Class are so numerous that joinder of all members of the Class is impractical.  Plaintiff is informed and believes, and thereon alleges, that the Class consists of at least tens of thousands of persons.

5.4     This action involves the question as to whether Defendants' uniform practice of failing to disclose and subsequently billing emergency care patients for a

substantial Overhead Charge is unfair, false, deceptive, and/or misleading.   This question dominates over any individual issues that might exist.

5.5   The claims of Plaintiff are typical of the claims of the Class, and Plaintiff is a member of the Class as defined.

5.6   Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff shares the same interests as all Class members because Plaintiff's claims are typical of those of other Class members.  Plaintiff has retained competent class counsel who are experienced in class action litigation and who will fairly and adequately protect the interests of the Class members.

5.7   This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards for the party opposing the class.

5.8   This action is properly maintained as a class action in that the prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest.

5.9   This action is properly maintained as a class action in that Defendants have acted or refused to act on grounds generally applicable to all the members of the Class and have engaged in a systemwide policy of billing emergency care patients a substantial undisclosed Overhead Charge, thereby making final injunctive and corresponding declaratory relief concerning the Class as a whole appropriate.

5.10   There are questions of law and fact common to the Class, including, but not limited to:

(a)   Whether Defendants had a duty to disclose to their emergency patients their policy of imposing Overhead Charges on top of the charges for the specific items of treatment and services provided;

(b)   Whether Defendants had a policy and practice of failing to inform their emergency care patients of the existence and amounts of these Overhead Charges;

(c)   Whether Defendants had a policy and practice of concealing this information from their emergency care patients;

(d)   Whether Defendants had a policy and practice of concealing their formula or algorithm for determining the level of their Overhead Charge from their emergency care patients;

(e)   Whether Defendants knew that some patients would have not have sought emergency services from Defendants had this information been disclosed;

(g)   Whether Defendants' Contract authorizes Defendants to bill Class members these Overhead Charges;

(g)   Whether Defendants' Contract contains a promise by patients to pay these Overhead Charges;

(h)   Whether Defendants' practice of billing undisclosed Overhead Charges to Class members is an unconscionable billing practice;

(i)   Whether Defendants properly disclosed their Overhead Charges in their Contracts, on signage posted at or around their emergency departments, or verbally during the registration process; and

(j)     Whether the acts and conduct of Defendants alleged herein render a declaration necessary and proper as to the rights of Defendants and the obligations of Plaintiff and the Class.

5.11    A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since joinder of all Class members is impracticable and it would be virtually impossible for the Class members to efficiently redress their wrongs individually.   Even if all Class members could afford such individual litigation themselves, the court system would benefit from a class action. Individualized litigation would present the potential for inconsistent or contradictory judgments, particularly because this action revolves around a "duty to disclose," which is the same determination for every class member.   Individualized litigation would also magnify the delay and expense to all parties and the court system presented by the issues of the case.   By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court, as well as economy of scale and expense.

5.12    The definition of the class is clear and the members of the class are easily identifiable based on objective information.   Members of the class can be identified using information that is kept by Defendants in the usual course of business and/or in the control of Defendants. Class members can be notified of the class action through publication and direct mailings to address lists maintained in the usual of course of business by Defendants.

## VI. FIRST CAUSE OF ACTION: FOR DECLARATORY JUDGMENT

6.1     Plaintiff herein repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as though the

same were set forth at length herein.

6.2    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Plaintiff requests that this Court issue a declaratory judgment declaring:

(a)    that Defendants' billing practices as they relate to Class members are unconscionable;

(b)    that the Contract does not authorize Defendants to charge undisclosed Overhead Charges;

(c)    that Defendants have a duty to disclose their intention to bill Overhead Charges to emergency room patients prior to providing treatment/services which trigger such charges; and

(d)    that Plaintiff and members of the Class are liable to Defendants for no more than the charges for the individual items of treatment/services provided.

6.3    An actual controversy exists between Plaintiff and Defendants relating to their respective legal rights and duties.  Plaintiff contends that Defendants have a duty to fully disclose their emergency room Overhead Charge, and to disclose the basis on which the amount of charge will be determined, prior to rendering services that result in such Overhead Charge being incurred, and correspondingly, Plaintiff has a right to disclosure of such Overhead Charge before treatment/services triggering the Overhead Charge are rendered.  Plaintiff further contends that, under Defendants' Contract, she should only be required to pay the Hospital's charges for individual items of treatment/services rendered, and not an undisclosed Overhead Charge.  In contrast, Defendants assert that their Contract entitles them to bill an Overhead Charge in addition to the individual items of treatment/services rendered, and have billed Plaintiff an Overhead Charge.  To resolve the ongoing disputes over Defendants' Overhead

Charges, Plaintiff and members of the Class are entitled to a determination as to whether Defendants have a duty to disclose their Overhead Charge in advance of such Overhead Charge being incurred, and further entitled to a declaration and appropriate injunctive relief with regard to a patient's legal rights and duties with respect to Defendants' Overhead Charges and the construction of Defendants' Contract. Specifically, Plaintiff and members of the Class are entitled to a declaration that Defendants' practice of charging a substantial undisclosed Overhead Charge, in addition to the charges for the specific services and treatments provided, is not authorized by Defendants' Contract. Further, the Declaratory Judgment Act is remedial in nature and should be liberally construed.

6.4    Plaintiff and members of the Class are entitled to a further declaration that Defendants owed Plaintiff and Class members a duty to disclose, in advance of providing treatment that would trigger an Overhead Charge, their intention to charge such an Overhead Charge, because of (1) the substantial nature of Defendants' Overhead Charge, (2) the special relationship that exists between Defendants and emergency department patients, (3) the hidden nature of Defendants' Overhead Charge, (4) the general lack of knowledge of emergency department patients as to Defendants' intention to bill them such an Overhead Charge, (5) the lack of reasonable opportunity for an emergency department patient to find out about such an Overhead Charge, (6) the fact that Defendants are aware that many, if not most patients, are unaware of Defendants' intention to bill them an Overhead Charge, and (7) the fact that knowledge as to such an Overhead Charge, if properly disclosed in advance of providing treatment, would be a material factor in a patient's decision to remain at Defendants' emergency department in order to obtain treatment and services.

6.5    Plaintiff is also entitled to declaratory and injunctive relief to prohibit Defendants from continuing to bill emergency patients for Overhead Charges without full and fair disclosure in advance of treatment which will trigger such Overhead Charges, and to prohibit Defendants from pursuing existing collection activity based on such Overhead Charges.

6.6    The declarations sought above are necessary and appropriate, since Plaintiff and the Class have been impacted financially by Defendants' undisclosed Overhead Charges. By granting the declaratory relief sought by Plaintiff, this Court will clarify and resolve an ongoing and continuing dispute as to the rights and duties of the parties with regard to Defendants' billing practices. Even for those patients whose Overhead Charge has not yet been paid, they should not have to wait until collection efforts are under way before obtaining a legal determination of their obligations with respect to Defendants' Overhead Charges. Finally, the declarations sought herein would benefit future emergency care patients of Defendants, by bringing about increased pricing transparency.

6.7    This claim for declaratory and injunctive relief is an independent, stand-alone claim brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, which provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." Further, this Act is remedial in nature and should be liberally construed.

6.8    No monetary damages or restitution are sought in this complaint. However, Plaintiff has incurred and is entitled to recover costs and reasonable and

necessary attorney's fees in seeking this declaratory judgment.

## VII. MOTION FOR CLASS CERTIFICATION

7.      Plaintiff is filing—and serving on Defendants with this complaint—a motion for class certification and request for a scheduling order to govern discovery and briefing regarding class certification issues. The motion is attached hereto as Exhibit 1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for the following relief against Defendants:

1.      For an order certifying that this action may be maintained as a class action against Defendants, appointing Plaintiff and her counsel to represent the Class, and directing that reasonable notice of this action be given by Defendants to the members of the Class;

2.      For a declaration or declarations as prayed herein;

3.      For injunctive relief to enforce the relief prayed for herein;

4.      For an order awarding Plaintiff and members of the Class the costs of the suit, including, but not limited to, reasonable attorneys' fees and expert fees; and

5.      For such other and further relief as may be just and proper.

Respectfully submitted,

BLUMBERG BAGLEY PLLC

by: _/s/ Peter F. Bagley_
    Peter F. Bagley
    Texas Bar No. 00783581
    peter@blumbergbagley.com
    Daniel E. Blumberg
    Texas Bar No. 02512985
    daniel@blumbergbagley.com
2304 Interstate 20 West, Suite 190
Arlington, Texas 76017
(817) 277-1500
Facsimile (817) 277-1170

LAW OFFICE OF BARRY KRAMER

by: _/s/ Barry L. Kramer_
    Barry L. Kramer
    kramerlaw@aol.com
9550 S. Eastern Avenue, Suite 253
Las Vegas, NV  89123
(702) 778-6090

ATTORNEYS FOR PLAINTIFF
(PRO HAC VICE PENDING)

# EXHIBIT

# 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **AISHA RILEY, on behalf of herself** | § | |
| **and all others similarly situated,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION** _____ |
| | § | |
| **HOUSTON NORTHWEST** | § | |
| **OPERATING COMPANY, L.L.C., a** | § | |
| **Texas Limited Liability Company** | § | |
| **d/b/a "HCA Houston Healthcare** | § | |
| **Northwest" and "Houston Northwest** | § | |
| **Medical Center"; and GULF COAST** | § | |
| **DIVISION, INC., a Texas Corporation,** | § | |
| **d/b/a "HCA Houston Healthcare,"** | § | |
| **Defendants.** | § | |

## PLACEHOLDER MOTION FOR CLASS CERTIFICATION

Plaintiff, Aisha Riley (hereinafter "Plaintiff"), by and through her undersigned counsel, hereby respectfully moves the Court for an Order certifying this action as a class action in accordance with Rule 23(b)(1), 23(b)(2), or 23(c)(4), Federal Rules of Civil Procedure, on behalf of herself and a class of all other persons similarly situated, but respectfully requests that the Court continue the instant motion until a discovery schedule and briefing deadlines are established by the Court in connection with the parties' submission of a proposed case management schedule.

## I.    THE REASON FOR THE MOTION

This case is in its infancy and no discovery by either side has taken place as of this time. While Defendants have given no indication that they intend to attempt a so-called "buy off," or "pick off" in an effort to moot Plaintiff's representative claims, Plaintiff

1

submits this motion out of an abundance of caution, and to remove any such attempt as a potential issue. See, *e.g., Damasco v. Clearwire Corp.,* 662 F.3d 891, 896 (7th Cir. 2011). ("Class Action Plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs. . . If the parties have yet to fully develop the facts needed for certification, they then can ask the district court to delay its ruling to provide time for additional discovery or investigation.")  Plaintiff respectfully asks the Court to continue its consideration of the merits of this motion until there has been the opportunity to complete discovery on class issues and to submit supplemental briefing in support or opposition to the motion.

## II.   **JURISDICTION**

Federal courts allow for class actions to seek class wide relief under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. This complaint easily satisfies the federal requisites for such class certification.  The Complaint alleges that through a common course of conduct, Defendants and their affiliated hospitals bill and seek payment from emergency room patients of a hidden and undisclosed emergency fee purportedly to cover the overhead costs of operating their emergency care facilities (hereinafter "Overhead Charge") which is improperly added to a patient's bill on top of the itemized charges for individual items of treatment and services provided to the patient. A justiciable controversy is presented herein as to (1) whether Defendants' admission contract form authorizes Defendants to bill and requires emergency room patients to pay such Overhead Charges, and (2) whether Defendants' billing of such Overhead Charges is unconscionable. Defendants have acted in a substantially similar manner with respect to each Class member, such that final declaratory and injunctive relief is necessary and

2

appropriate for the Class as a whole under the causes of action alleged in the Complaint.

## III.    THE PROPOSED CLASS

The proposed "Class," is defined in the operative complaint as follows:

*All individuals who, within the last four years, received treatment at a HCA Houston Healthcare emergency facility in Texas, and who were charged an emergency department facility fee to cover overhead expenses which was billed on top of the charges for the individual items of treatment and services provided (the "Class"). (Such overhead charges are designated with a CPT Code of 99281, 99282, 99283, 99284, or 99285.) Excluded from the Class are any officers or directors of Defendants, together with the legal representatives, heirs, successors, or assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.*

## IV.    NUMEROSITY, COMMONALITY, TYPICALITY AND ADEQUACY

Financial and usage figures reported by Defendants for Houston Northwest Medical Center to governmental authorities reflect that for the most recently reported single year, the hospital maintains 251 General Med/Surg Beds, and has Total Patient Revenue of $1,971.897,152.  The reported figures further reflect hospital estimates of 27,200 Emergency Room visits where the patient was seen in the emergency room and not admitted to the hospital, and 15,800 emergency room visits where the patient was seen in the emergency room and admitted to the hospital.

These figures represent numbers for only one of the multiple HCA Houston Healthcare emergency facilities in Texas, and for only a single year.  With tens of thousands of emergency room patient visits for just one of Defendants' hospitals during

a single year, numerosity is unquestionably met in this action.

As alleged in the Complaint, Defendants' standard practice is to use a standard intake form in its emergency room facilities (hereinafter "Contract"), which is drafted by Defendants, whose terms are not dictated by statute or otherwise, and which all emergency care patients (or their agents) were presented with and requested to sign.

The questions as to whether such document authorizes Defendants' hospitals to bill emergency room patients a "Overhead Charge" and/or contains a promise by patients to pay such a "Overhead Charge" are common questions applicable to all emergency room patients and a simple matter of contract interpretation. Interpretation of a form, adhesive contract is properly made on an "objective" or "reasonable person" standard, and should be the same for all patients. This is particularly the case where the only issue to be decided is whether the Contract itself discloses to patients Defendants' intention to bill patients an Emergency Room Overhead Charge. These shared and common issues are more than sufficient to meet the requirement of commonality.

Typicality is met in the instant action because Plaintiff was an emergency room patient who visited a HCA Houston Healthcare emergency room facility in Texas, who signed Defendants' form Contract, and who was subsequently billed an Overhead Charge.

Adequacy is met by the interest shown by Plaintiff and her legal representatives who have substantial class action litigation experience.[1]

## V.    CONCLUSION

Plaintiff seeks a contract interpretation as to Defendants' form Contract and a finding that Defendant's billing emergency room patients its undisclosed Overhead

---

[1]Both Blumberg Bagley PLLC and Law Office of Barry Kramer have extensive experience in class action litigation.

4

Charges is unconscionable. For the foregoing reasons, and for those that will be borne out by further class discovery, this case is appropriate for class certification pursuant to Rule 23, Federal Rules of Civil Procedure. Accordingly, Plaintiff, on behalf of herself and the proposed Class, respectfully request that the Court: (i) enter and reserve ruling on Plaintiff's Motion for Class Certification, (ii) permit discovery on class-wide issues as set forth under an appropriate case management and discovery schedule, (iii) grant Plaintiff leave to file a supplemental memorandum in support of her Motion for Class Certification upon the conclusion of class-wide discovery, (iv) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein, and (v) provide all other and further relief that the Court deems reasonable and just.

Respectfully submitted,

BLUMBERG BAGLEY PLLC

by: */s/ Daniel E. Blumberg*
   Daniel E. Blumberg
   Texas Bar No. 02512985
   daniel@blumbergbagley.com
   Peter F. Bagley
   Texas Bar No. 00783581
   peter@blumbergbagley.com
2304 Interstate 20 West, Suite 190
Arlington, Texas 76017
(817) 277-1500
Facsimile (817) 277-1170

LAW OFFICE OF BARRY KRAMER

By: /s/ Barry L. Kramer
   Barry L. Kramer
   kramerlaw@aol.com
9550 S. Eastern Avenue, Suite 253
Las Vegas, NV 89123
(702) 778-6090

ATTORNEYS FOR PLAINTIFF
(PRO HAC VICE PENDING)