**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AISHA RILEY, on behalf of herself** | § | |
| **and all others similarly situated,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION 4:19-cv-02496** |
| | § | |
| **HOUSTON NORTHWEST** | § | |
| **OPERATING COMPANY, L.L.C., a** | § | |
| **Texas Limited Liability Company** | § | |
| **d/b/a "HCA Houston Healthcare** | § | |
| **Northwest" and "Houston Northwest** | § | |
| **Medical Center"; and GULF COAST** | § | |
| **DIVISION, INC., a Texas Corporation,** | § | |
| **d/b/a "HCA Houston Healthcare,"** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

## I. INTRODUCTION

1.1    Plaintiff Aisha Riley ("Plaintiff"), on behalf of herself and all others similarly situated, files this Second Amended Class Action Complaint against Defendants Houston Northwest Operating Company, L.L.C. doing business as "HCA Houston Healthcare Northwest" and "Houston Northwest Medical Center" and Gulf Coast Division, Inc. doing business as "HCA Houston Healthcare" ("Defendants"), challenging Defendants' unfair, false, misleading and deceptive practice of charging their emergency care patients a substantial but undisclosed emergency room facility fee (hereinafter, "Surcharge") on top of the charges for the individual items of treatment and services provided.  Although advance knowledge and disclosure of this Surcharge, which is essentially an undisclosed "cover charge" or "overhead charge" for being seen at Defendants' emergency room facilities, would be a substantial factor in a patient's

decision to seek emergency care from Defendants, it is effectively hidden from Defendants' emergency room patients.

1.2    Using the brand name "HCA Houston Healthcare," Defendants operate approximately 12 hospitals with emergency departments under this brand in the state of Texas. This complaint applies to patients who received treatment at any of these emergency departments and who were billed a Surcharge during the four years preceding Plaintiff's filing suit. By this complaint, Plaintiff seeks declaratory and injunctive relief on the basis that these undisclosed Surcharges were unauthorized by contract, and Defendants' associated billing practices were unconscionable and violative of the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 *et seq.* ("DTPA").

## II.  PARTIES

2.1    Plaintiff Aisha Riley, a Texas citizen and resident of Dallas County, Texas was admitted to, treated at and released from Houston Northwest Medical Center, one of Defendants' hospitals, located in Houston, Texas.

2.2    Defendant HCA Houston Healthcare Northwest is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas that owns, operates and/or provides management and billing services to approximately 12 hospitals with emergency department facilities in Texas (referred to herein as "HCA Houston Hospitals"), including Houston Northwest Medical Center. "HCA Houston Healthcare" is named as a defendant herein pursuant to the provisions of Rule 17 of the Federal Rules of Civil Procedure. Plaintiff is informed and believes that "HCA Houston Healthcare" is an assumed name of Gulf Coast Division, Inc., a Texas corporation, but specifically invokes her right to institute suit against whatever entity

was conducting business using the assumed or common name of "HCA Houston Healthcare" with regard to the events hereinafter described. Plaintiff specifically invokes her right under Rule 17 to have the true name of this party substituted at a later time if necessary. **Defendant HCA Houston Healthcare was previously served with process by serving its registered agent: CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.**

2.3     Defendant Houston Northwest Operating Company, L.L.C. is a Limited Liability Company organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas that owns, operates and/or provides management and billing services to one or more hospitals in Texas, including Houston Northwest Medical Center (referred to herein as "Hospital"). "Houston Northwest Medical Center" is named as a defendant herein pursuant to the provisions of Federal Rule of Civil Procedure 17. Plaintiff is informed and believes that "Houston Northwest Medical Center" is an assumed name of Houston Northwest Operating Company, L.L.C. but specifically invokes her right to institute suit against whatever entity was conducting business using the assumed or common name "Houston Northwest Medical Center" with regard to the events hereinafter described. Further, upon information and belief, Houston Northwest Medical Center consists of two members—Houston Northwest Partners, Ltd. and Houston Northwest Concessions, LLC. Houston Northwest Partners, Ltd. (an unincorporated association for diversity purposes) is owned by HNW GP, Inc. and HNW LP, Inc., two corporations incorporated in the State of Delaware. Public records on file with the Texas Secretary of State purport to show that Houston Northwest Concessions, LLC is wholly owned by Houston Northwest Operating Company, L.L.C. Though Plaintiff's counsel has conferred with Defendants' counsel to

clarify the layers of members of the limited liability company, Defendants have been unwilling to confirm or deny the information above. Plaintiff specifically invokes her right under Federal Rule of Civil Procedure 17 to have the true name of this party substituted at a later time if necessary. **Defendant Houston Northwest Medical Center was previously served with process by serving its registered agent: CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.**

### III.  JURISDICTION AND VENUE

3.1    This Court has jurisdiction pursuant to 28 U.S.C. 1332 on two diversity grounds. First, although Plaintiff is a citizen of Texas, Plaintiff believes that at least one other member of the class of plaintiffs in this class action case is a citizen of a state different from Defendants, which have their principal places of business in Texas. Second, at least one of the members of Defendant Houston Northwest Medical Center, which is a limited liability company, is a citizen of a state different from Texas, as described in section 2.3 above. Further, Plaintiff avers that the amount in controversy exceeds $5 million.

3.2    The absent class members consist of every emergency room patient that visited one of approximately 12 separate, major hospitals owned and operated under the HCA brand.  Pursuant to the American Hospital Directory website, which is a widely accepted, consistently accurate source of information on hospitals in the United States, HCA Houston Healthcare Northwest Emergency Room had 27,200 non-admitted and 15,800 admitted emergency room patients, for a total of approximately 43,000 emergency room patients, during the most recently reported year, all of whom would qualify as class members under the current definition.  Over the last four years, this

would amount to approximately 150,000 putative class members for this single hospital. With 12 hospitals, the number of putative class members easily exceeds 1,000,000.

3.3    Although Defendants maintain records as to the addresses of the over 1,000,000 putative class members, Plaintiffs do not currently possess such records. However, Texas obviously has a number of visitors from other states, of which a certain percentage will suffer an emergency medical condition that will bring them to the nearest emergency room. With well over 1,000,000 emergency room visits within the class period, it is a virtual certainty that at least one of these emergency room visits is from an out-of-state resident, thus meeting the minimum diversity requirements for federal jurisdiction.

3.4    Based on the above, federal jurisdiction requirements are met in the instant action since it is inevitable that at least one absent class member, out of more than 1,000,000 putative class members, will be a citizen of a state different than Texas and because one of the two Defendants consists of a member that is a resident of a foreign state. Also, because the fees in question in this case range from $623.00 to $3,525.00 per visit, it is a mathematical certainty that the amount in controversy will exceed $5 million.

3.5    Venue is proper in the Southern District of Texas because each Defendants' principal office in this State is in Harris County, Texas, because the contract was to be performed in whole or in part in Harris County, Texas and/or because a substantial part of the events or omissions giving rise to the claims herein occurred in Harris County, Texas.

## IV.  FACTS

**A.     AGENCY ALLEGATIONS**

4.1     Plaintiff is informed, believes and alleges that in committing the acts alleged herein each named Defendant is and was the agent of the other named Defendant and acted with the knowledge, consent, permission, cooperation and authorization of the other named Defendant.

4.2     Plaintiff is informed, believes and alleges that Defendants exercise control over their agent hospitals by developing and controlling their internal policies relating to pricing, billing and collection practices, among other things.

4.3     Plaintiff is informed, believes and alleges that at Defendants' direction and with Defendants' approval each HCA Houston Hospital represents itself as being part of the HCA Houston Healthcare system by using HCA Houston in its name and/or identifying itself as part of the HCA Houston Healthcare system.

4.4     At all relevant times each and every individual facility included in this case was and is the agent of Defendants.  In committing the acts alleged herein each and every hospital facility acted in the course and scope of its agency and was acting with the consent, permission, authorization, satisfaction and knowledge of Defendants and perpetrated and/or aided and abetted the wrongdoings described herein.  Plaintiff is informed, believes and alleges that all actions of each of Defendants' facilities were ratified and approved by Defendants or their officers, directors, controlling persons, agents, partners or joint venturers.

**B.     GENERAL ALLEGATIONS**

4.5     Plaintiff is informed and believes and thereon alleges that at all relevant times all HCA Houston Hospitals used a form conditions of admission form (hereinafter

"Contract") drafted by Defendants, the terms of which are not dictated by statute or otherwise, which all emergency care patients (or their agents) were presented with and asked to sign.

4.6    Plaintiff is informed and believes that Defendants' form Contract is substantially similar for all HCA Houston Hospitals in one key aspect – none of Defendants' form Contracts mention the Surcharge that Defendants intend to charge, and do charge, emergency room patients in addition to the charges for the specific services provided. Further, neither the Surcharge nor Defendants' intention to add to a Surcharge to an emergency patient's bill is disclosed on signage posted in or around Defendants' emergency room facilities or disclosed verbally during the emergency room registration process.

4.7    Despite the lack of disclosure, at all relevant times Defendants had a practice of charging emergency department patients (other than Medicare/Medicaid patients) a hidden and undisclosed Surcharge set at one of five levels according to the seriousness and complexity of the patient's condition, with such level being based on a secret formula or algorithm known only to Defendants and determined only after treatment was rendered.    This Surcharge was imposed in addition to the itemized charges for the individual items of treatment or service provided to the patient.   For example, for ER Level fees for Houston Northwest Medical Center the 2019 Surcharge amounts are as follows:  Level 1: $623.32; Level 2: $1,152.94; Level 3: $2,208.93; Level 4: $3,667.90; and Level 5: $3,525.

4.8    Plaintiff is informed and believes and based thereon alleges that all of Defendants' hospitals included in this action likewise charged a Surcharge to their emergency department patients.

4.9     Plaintiff is informed and believes and based thereon alleges that this substantial Surcharge is not based on the individual items of treatment or services provided to the patient, such as X-rays, laboratory services, sterile supplies, drugs, etc. Rather, it is a Surcharge charged to emergency patients simply for presenting and being seen at any one of Defendants' hospital emergency departments.  This Surcharge is imposed on top of the charges for specific items of treatment/services.  Further, the formula or algorithm which Defendants use to determine the level of Surcharge (1, 2, 3, 4 or 5) is also hidden from patients, making it virtually impossible for patients to know or seek to control the level or amount of the Surcharge they will be charged for their visit. Further, in addition to not being disclosed in Defendants' Contract, the Surcharge is not visibly posted on signage in or around Defendants' emergency departments, where a patient would at least have the opportunity of knowing of its existence, nor is it disclosed to patients verbally during the registration process.  Thus, Defendants failed to inform emergency care patients that they would be billed a substantial undisclosed and unmentioned Surcharge which was billed on top of the charges for individual items of treatment furnished to the patient which, if known about prior to treatment, would be a substantial factor in a patient's decision to remain at the hospital and proceed with treatment.  The high cost of medical services is a matter of great public concern and emergency care patients have an absolute right to be informed of a substantial Surcharge before it is incurred.  Defendants' failure to disclose their Surcharges contributes to a lack of pricing transparency and a lack of informed consent by patients, who, despite an absolute right to know about this significant charge prior to treatment, are generally totally unaware of such Surcharges or how they are determined.  Plaintiff is further informed and believes and thereon alleges that many emergency care patients,

if informed of Defendants' Surcharges prior to their being treated, would choose to seek less costly treatment elsewhere.

4.10    Emergency patients have no reasonable opportunity to review or negotiate these Surcharges or to shop around before receiving care.  Accordingly, these patients cannot be deemed to have agreed to pay these Surcharges.

4.11    Despite being entitled to charge no more than the charges for services rendered, Defendants bill this additional Surcharge even though (a) this substantial Surcharge is not disclosed to patients in Defendants' Contract, in signage posted in or around their emergency departments, or verbally to patients at the time of registration, (b) emergency care patients have an absolute right to be informed about a substantial Surcharge prior to receiving treatment that will trigger such charge, (c) emergency care patients cannot reasonably be expected to be aware of this Surcharge, (d) Defendants are well aware that most emergency patients are unaware of Defendants' intention to add a Surcharge to their bill, and (e) knowledge of the existence and amounts of this Surcharge would be a substantial factor in influencing a reasonable patient's decision as to whether to remain and seek treatment at an HCA Houston Hospital emergency department.  The failure to disclose the Surcharge is particularly egregious in light of Hospital's claim to "set the standard for what you and your family should expect when visiting a hospital."  Unlike a normal arms-length transaction between a buyer and seller, a patient seeking medical services at one of Defendants' emergency departments places a great degree of trust and confidence on the good intentions of the hospital to treat him or her fairly and with compassion.  This trust and reliance are heightened by Defendants' Mission and Values statements which appear on their website as follows:

In pursuit of our mission, we believe the following value statements are essential and timeless: "We recognize and affirm the unique and intrinsic worth of each individual.  We treat all those we serve with compassion and kindness.  We trust our colleagues as valuable members of our healthcare team and pledge to treat one another with loyalty, respect and dignity.  We act with absolute honesty, integrity and fairness in the way we conduct our business and the way we live our lives.  We foster a culture of inclusion and diversity across all areas of our company that embraces and enriches our workforce, physicians, patients, partners and communities."

4.12    Defendants' failure to disclose their intention to bill Plaintiff and the Class members a substantial emergency department Surcharge is not only a failure to "act with absolute honesty, integrity and fairness" in the way they conduct their business, but constitutes actionable consumer fraud or deceit because Defendants had exclusive knowledge that they would be billing Plaintiff and the Class members such a Surcharge; this fact was not known or reasonably accessible to Plaintiff or the Class members at the time of their emergency department visits; and/or Defendants actively concealed their intention to bill Plaintiff and the Class members such a Surcharge by failing to mention it in the Contract, in signage posted in the emergency room facilities, or verbally during the registration or triage processes.  Patients have an absolute right to be informed of a Surcharge in advance of its being incurred, and a reasonable consumer would deem advance knowledge that he or she would be billed a substantial Surcharge to be an important factor in determining whether or not to remain and obtain treatment at the hospital.

## C.   THE REPRESENTATIVE PLAINTIFF'S CLAIM

4.13   On or about December 24, 2018 Plaintiff received emergency treatment/services at Houston Northwest Medical Center, where she was provided with and signed Defendants' form Contract.   While there Plaintiff received no notice or warning, either in Defendants' Contract, in posted signage in the emergency department, or verbally at the time of registration, as to the substantial Surcharge that Defendants intended to add (and did add) to Plaintiff's bill on top of the individual charges for each item of treatment and services provided to her.   Plaintiff is a consumer as defined in the Tex. Bus. & Com. Code § 17.45(4), a provision of the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 *et seq.*  ("DTPA").

4.14   The gross amount subsequently billed for the treatment/services provided to Plaintiff by the Hospital was $10,381.22 which, Plaintiff is informed and believes, included a hidden Surcharge of $2,208.93.   This Surcharge was hidden by Defendants' failure to disclose the Surcharge prior to treatment and even on the summary billing statement subsequently sent to Plaintiff.

4.15   Plaintiff was shocked, dismayed and aggrieved when she found out that she had been charged a Surcharge in addition to all of the individual items of treatment and services as a result of merely being seen in the Hospital's emergency department.

## V.  CLASS ACTION ALLEGATIONS

5.1   Plaintiff brings this claim for declaratory relief pursuant to Rule 23, Federal Rules of Civil Procedure and/or other applicable law, on behalf of herself and a class of all other persons similarly situated, defined as follows:

> All individuals who, within four years of Plaintiff's filing suit, received treatment at one of Defendants' hospital emergency departments in Texas

and who were charged an emergency department charge designated with a CPT Code of 99281, 99282, 99283, 99284 or 99285.

Excluded from the Class are any officers or directors of Defendants, together with the legal representatives, heirs, successors, or assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.

5.2    This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, predominance, typicality, adequacy of representation and superiority requirements.    Plaintiff seeks to represent an ascertainable Class with a well-defined community of interest in the questions of law and fact involved in this matter.

5.3    The members of the Class are so numerous that joinder of all members of the Class is impractical.  Plaintiff is informed and believes, and thereon alleges, that the Class consists of at least hundreds of thousands of persons.

5.4    This action involves the question as to whether Defendants' uniform practice of failing to disclose and subsequently billing emergency care patients for a substantial Surcharge is unfair, false, deceptive and/or misleading and whether this practice constitutes a deceptive or unconscionable trade practice as defined by the DTPA. These questions dominate over any individual issues that might exist.

5.5    The claims of Plaintiff are typical of the claims of the Class and Plaintiff is a member of the Class as defined.

5.6    Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff shares the same interests as all Class members because Plaintiff's claims are typical of those of other Class members.  Plaintiff has retained competent class counsel who are experienced in class action litigation and who will fairly and adequately protect the interests of the Class members.  Both Plaintiff and the members

of the Class are consumers as defined in Tex. Bus. & Com. Code § 17.45(4), a provision of the DTPA.

5.7     This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards for the party opposing the class.

5.8     This action is properly maintained as a class action in that the prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

5.9     This action is properly maintained as a class action in that Defendants have acted or refused to act on grounds generally applicable to all the members of the Class and have engaged in a system wide policy of billing emergency care patients a substantial undisclosed Surcharge, thereby making final injunctive and corresponding declaratory relief concerning the Class as a whole appropriate.

5.10    There are questions of law and fact common to the Class including, but not limited to:

(a)     Whether Defendants' Emergency Care patients had a right to be informed about a Surcharge before treatment was provided triggering such a charge;

(b)     Whether Defendants had a duty to disclose to their emergency patients their policy of imposing Surcharges on top of the charges for the specific items of treatment and services provided;

(c)     Whether Defendants had a policy and practice of failing to inform their emergency care patients of the existence and amounts of these Surcharges;

(d)     Whether Defendants had a policy and practice of concealing this information from their emergency care patients;

(e)     Whether Defendants had a policy and practice of concealing their formula or algorithm for determining the level of their Surcharge from their emergency care patients;

(f)     Whether Defendants knew that some patients would have not have sought emergency services from Defendants had this information been disclosed;

(g)     Whether Defendants' Contract authorizes Defendants to bill Class members these Surcharges;

(h)     Whether Defendants' Contract contains a promise by patients to pay these Surcharges;

(i)     Whether Defendants' practice of billing undisclosed Surcharges to Class members is an unconscionable billing practice;

(j)     Whether Defendants properly disclosed their Surcharges in their Contracts, on signage posted at or around their emergency departments or verbally during the registration process;

(k)     Whether the acts and conduct of Defendants alleged herein render a declaration necessary and proper as to the rights of Defendants and the obligations of Plaintiff and the Class;

(l)     Whether Defendants' acts and omissions complained of are unconscionable as defined by Texas common law;

(m)   Whether Defendants' acts and omissions complained of are an unconscionable action or course of action as defined in Tex. Bus. & Com Code § 17.45(5), a provision of the DTPA; and

(n)   Whether Defendants' acts and omissions complained of constitute one or more deceptive acts, practices and misrepresentations as defined in the DTPA.

5.11   A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since joinder of all Class members is impracticable and it would be virtually impossible for the Class members to efficiently redress their wrongs individually.   Even if all Class members could afford such individual litigation themselves, the court system would benefit from a class action. Individualized litigation would present the potential for inconsistent or contradictory judgments, particularly because this action revolves around a hospital's "duty to disclose" its Surcharges, which is the same determination for every class member.   Individualized litigation would also magnify the delay and expense to all parties and the court system presented by the issues of the case.   By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court, as well as economies of scale and expense.

5.12   The definition of the class is clear and the members of the class are easily identifiable based on objective information.   Members of the class can be identified using information that is kept by Defendants in the usual course of business and/or in the control of Defendants. Class members can be notified of the class action through publication and direct mailings to address lists maintained in the usual of course of business by Defendants.

## VI.  FIRST CAUSE OF ACTION: FOR DECLARATORY JUDGMENT

6.1     Plaintiff herein repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as though the same were set forth at length herein.

6.2     Plaintiff and the members of the Class are consumers as that term is defined in Tex. Bus. & Com. Code § 17.45(4), a provision of the DTPA, in force at the time Defendants committed the acts and omissions of which Plaintiff complains. Pursuant to the Declaratory Judgments Act, 28 U.S. Code § 2201, Fed. R. Civ. P. 57 and Tex. Bus. & Com. Code § 17.50(b)(4) Plaintiff requests that this Court issue a declaratory judgment declaring:

(a)     that Defendants' billing practices as they relate to Plaintiff and the Class are unconscionable as defined by Texas common law;

(b)     that Defendants' billing practices as they relate to Plaintiff and the Class members are an unconscionable action or course of action as defined by Tex. Bus. & Com. Code §17.45(5), a provision of the DTPA;

(c)     that the Contract does not authorize Defendants to charge the undisclosed Surcharges complained of;

(d)     that Plaintiff and members of the Class are liable to Defendants, under the Contract, for no more than the charges for the individual items of treatment/services provided; and

(e)     that Defendants' billing practices as they relate to Plaintiff and the Class are deceptive trade practices as defined in the DTPA and, more particularly, by Tex. Bus. & Com. Code §§ 17.46 and 17.50.

6.3    An actual controversy exists between Plaintiff and the members of the Class, on the one hand, and Defendants, on the other, relating to their respective legal rights and duties.  Plaintiff and the members of the Class contend that patients seen at one of Defendants' emergency room facilities have an absolute right to be informed of a Surcharge prior to treatment which triggers such charge, and that Defendants have a corresponding duty to fully disclose such Surcharges in advance of treatment, as well as the basis on which the level of charge will be determined.  Plaintiff and the members of the Class further contend that under Defendants' Contract they should not be required to pay for Defendants' undisclosed Surcharges.  In contrast, Defendants assert that they are entitled to bill a Surcharge to cover overhead and other costs of operating an emergency room, in addition to the individual items of treatment/services rendered, and have billed Plaintiff and members of the Class accordingly.  To resolve the ongoing disputes over Defendants' Surcharges, Plaintiff and the members of the Class are entitled to a determination as to whether patients have a "right to know" and/or Defendants have a "duty to disclose" their Surcharges in advance of such Surcharges being incurred, and are further entitled to a declaration and appropriate injunctive relief with regard to a patient's legal rights and duties and the construction of Defendants' Contract.   Specifically, Plaintiff and the members of the Class are entitled to a declaration that Defendants' practice of charging a substantial undisclosed Surcharge in addition to the charges for the specific services and treatments provided is not authorized by Defendants' Contract, is violative of Texas common law, and is violative of the DTPA.  This relief is authorized by the Declaratory Judgments Act, 28 U.S. Code § 2201, Federal Rule of Civil Procedure 57 and Tex. Bus. & Com. Code § 17.50(b) subparts (2) and (4).

6.4     Plaintiff and members of the Class are entitled to the above declarations because of (1) the substantial nature of Defendants' Surcharge, (2) the special relationship that exists between Defendants and emergency department patients, (3) the hidden nature of Defendants' Surcharge, (4) the general lack of knowledge of emergency department patients as to Defendants' intention to bill them such a Surcharge, (5) the lack of reasonable opportunity for an emergency department patient to find out about such a Surcharge, (6) the fact that Defendants are aware that many, if not most patients, are unaware of Defendants' intention to bill them a Surcharge, and (7) the fact that knowledge as to such a Surcharge, if properly disclosed in advance of providing treatment, would be a material factor in a patient's decision to remain at Defendants' emergency department in order to obtain treatment and services.

6.5     Plaintiff and the members of the Class are also entitled to declaratory and injunctive relief to prohibit Defendants from continuing to bill emergency patients for Surcharges without full and fair disclosure in advance of treatment which will trigger such Surcharges, and to prohibit Defendants from pursuing existing collection activity based on such Surcharges.

6.6     The declarations sought above are necessary and appropriate since Plaintiff and the Class have been and continue to be impacted financially by Defendants' undisclosed Surcharges.  By granting the declaratory relief sought by Plaintiff and the Class this Court will clarify and resolve an ongoing and continuing dispute as to the rights and duties of the parties with regard to Defendants' Surcharges and billing practices.  Even those patients whose Surcharges have not yet been paid should not have to wait until collection efforts are under way before obtaining a legal determination of their obligations with respect to Defendants' Surcharges.  Finally, the declarations

sought herein would benefit future emergency care patients of Defendants by bringing about increased pricing transparency and informed consent.

6.7    No monetary damages or restitution are sought in this complaint. However, Plaintiff has incurred and is entitled to recover costs and reasonable and necessary attorney's fees in seeking this declaratory judgment pursuant to Tex. Bus. & Com. Code § 17.50(d) and Fed. R. Civ. P. 23(h).

## VII.  SECOND CAUSE OF ACTION: REQUEST FOR RELIEF UNDER DTPA

7.1    Plaintiff herein repeats, reiterates and realleges each and every allegation contained in paragraphs 1.1 through 5.12, 6.2, 6.5, 6.6 and 6.7 with the same force and effect as though the same were set forth at length herein.

7.2    Defendants have committed one or more deceptive and/or unconscionable trade practices, as defined in the DTPA, against Plaintiff and the members of the Class. More particularly, Defendants' acts, practices and misrepresentations complained of constitute one or more violations of the following provisions of the DTPA: Tex. Bus. & Com. Code § 17.46(b) subparts (12) and (24) and Tex. Bus. & Com. Code § 17.50(a) subparts (1) and (3).

7.3    Pursuant to Tex. Bus. & Com. Code § 17.50(b) Plaintiff and the members of the Class seek an order enjoining Defendants' acts and failures to act complained of herein, including but not limited to:

(a)    seeking collection of the undisclosed Surcharges from Plaintiff and the members of the Class;

(b)    seeking collection of Surcharges from future emergency room patients unless the Surcharge is clearly and conspicuously communicated to them prior to the same being incurred;

(c)     representing that the Contract authorizes Defendants to charge undisclosed Surcharges when it does not; and

(d)     continuing to bill Surcharges in addition to the charges for the individual items of treatment/services provided to Plaintiff and the members of the class without informing them of such charges in advance of their being incurred.

7.4     Pursuant to Tex. Bus. & Com. Code § 17.50(b)(4), Plaintiff and the members of the Class seek any other further relief which the Court deems proper.

7.5     Pursuant to Tex. Bus. & Com. Code § 17.50(d), Plaintiff and the Class seek their court costs and reasonable and necessary attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for the following relief against Defendants:

1.     For an order certifying that this action may be maintained as a class action against Defendants, appointing Plaintiff and her counsel to represent the Class and directing that reasonable notice of this action be given by Defendants to the members of the Class;

2.     For a declaration or declarations as prayed for herein;

3.     For injunctive relief to enforce the relief prayed for herein;

4.     For an order awarding Plaintiff and members of the Class the costs of the suit, including, but not limited to, reasonable attorneys' fees and expert fees; and

5.     For such other and further relief as may be just and proper.

Respectfully submitted,

BLUMBERG BAGLEY PLLC

by: _/s/ Daniel E. Blumberg_
    Daniel E. Blumberg
    Texas Bar No. 02512985
    daniel@blumbergbagley.com
    Peter F. Bagley
    Texas Bar No. 00783581
    peter@blumbergbagley.com
2304 Interstate 20 West, Suite 190
Arlington, Texas 76017
(817) 277-1500
Facsimile (817) 277-1170

LAW OFFICE OF BARRY KRAMER

by: _/s/ Barry L. Kramer_
    Barry L. Kramer
    kramerlaw@aol.com
9550 S. Eastern Avenue, Suite 253
Las Vegas, NV  89123
(702) 778-6090

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

    I hereby certify that on September 11, 2019, the foregoing document was served on counsel for Defendants via electronic mail pursuant to Local Rule CV-5.2(e).

                         _/s/ Daniel E. Blumberg_
                         Daniel E. Blumberg