United States District Court
Southern District of Texas

**ENTERED**

June 11, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AISHA RILEY, on Behalf of Herself and All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| HOUSTON NORTHWEST OPERATING COMPANY, L.L.C., a Texas Limited Liability Company d/b/a"HCA Houston Healthcare Northwest" and Houston Northwest Medical Center"; and GULF COAST DIVISION, INC., a Texas Corporation, d/b/a "HCA Houston Healthcare," | § § § § § § § § § § | CIVIL ACTION NO. H-19-2496 |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aisha Riley ("Plaintiff"), on behalf of herself and all others similarly situated, asserts claims against Houston Northwest Operating Company and Gulf Coast Division, Inc. ("Defendants") for declaratory and injunctive relief under the Texas Deceptive Trade Practices Act ("DTPA") and Texas common law.[1] Pending before the court is Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint & Brief In Support ("Motion to Dismiss") (Docket Entry No. 19).  For the

---

[1]Plaintiff's Second Amended Class Action Complaint ("Second Amended Complaint"), Docket Entry No. 13, p. 16 ¶ 6.2, p. 19 ¶¶ 7.2, 7.3.  All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

reasons explained below, the Motion to Dismiss will be granted in part and denied in part.

## I.  Factual and Procedural Background

Defendants operate a number of hospitals in Texas under the name HCA Houston Healthcare Northwest.[2]  The hospitals charge a general emergency room service fee (the "Service Fee") to patients of their emergency departments depending on the level of treatment provided.[3]  The hospitals require patients to sign a contract that does not specifically identify the Service Fee but requires payment of "the rates stated in the hospital's price list (known as the 'Charge Master')."[4]  The Charge Master is a spreadsheet available on Defendants' website listing the numerical codes, short descriptions, and pricing for procedures available at the hospital. The Charge Master includes listings for the five levels of the Service Fee described as "LVL 1 EMER DEPT," "LVL 2 EMER DEPT," "LVL 3 EMER DEPT," "LVL 4 EMER DEPT," and "LVL 5 EMER DEPT."[5]

---

[2]Id. at 2-3 ¶¶ 2.2, 2.3.

[3]Id. at 7 ¶ 4.7 (describing the Service Fee as a "surcharge"; Motion to Dismiss, Docket Entry No. 19, pp. 9, 12 (describing the Service Fee as an "ED Facility Fee").

[4]Conditions of Admission and Consent for Outpatient Care ("Patient Contract"), Exhibit 3 to Motion to Dismiss, Docket Entry No. 20-3, p. 3 ¶ 5.

[5]Charge Master, Exhibit 4 to Plaintiff's Response to Defendants' Motion to Dismiss Second Amended Complaint ("Plaintiff's Response"), Docket Entry No. 24-1, p. 154.  Charge Master spreadsheets for each of Defendants' hospitals are available online.  See Detail Price List, HCA Houston Healthcare, https://hcahoustonhealthcare.com/about/legal/detail-price-list.dot.

Defendants provide no other explanation as to when or how the Service Fee is applied.  One of these five levels of the Service Fee is charged to all patients (except Medicare/Medicaid patients) who visit Defendants' hospitals' emergency rooms in addition to charges for the specific procedures and services done.[6]

On December 24, 2018, Plaintiff received treatment at one of Defendants' hospitals, Houston Northwest Medical Center, where she signed the Patient Contract.[7]  The total bill for the services she received was $10,381.22, including the Service Fee of $2,208.93.[8] The hospital's contract with Plaintiff's health insurer reduced the bill to $5,331.94 and to $963.47 for the Service Fee.[9]  The hospital billed the balance of the $10,381.22 ($4,085.81) to Plaintiff because it did not exceed the deductible in her health insurance plan.[10]  The parties agree that Plaintiff never paid this bill.[11]  The account was referred to a debt collection agency, which has sent Plaintiff a letter of intent to collect.[12]

---

[6]Second Amended Complaint, Docket Entry No. 13, p. 7 ¶¶ 4.6, 4.7.

[7]Id. at 11 ¶ 4.13.

[8]Id.

[9]Houston Northwest Medical Center Bill, Exhibit 6 to Plaintiff's Response, Docket Entry No. 24-1, p. 587.

[10]Motion to Dismiss, Docket Entry No. 19, pp. 11-12.

[11]Id. at 12; Plaintiff's Response, Docket Entry No. 24, pp. 9-10.

[12]Medicredit Notice of Intent to Collect, Exhibit 5 to Plaintiff's Response, Docket Entry No. 24-1, p. 585.

Plaintiff filed her Original Class Action Complaint on July 10, 2019.[13] Her live pleading is her Second Amended Complaint filed on September 11, 2019.[14] Plaintiff alleges that Defendants' failure to disclose the Service Fee to emergency room patients in advance of treatment is unconscionable under Texas common law and violates the DTPA. Plaintiff seeks declaratory relief that Defendants' billing practices are unconscionable under Texas law and violate the DTPA, and that the Service Fee ($963.47) is not owed under the Patient Contract.[15] Plaintiff also seeks an injunction under the DTPA preventing Defendants from collecting the fee from patients who were not given prior notice of the fee and requiring Defendants to give future patients such notice.[16] Plaintiff does not seek monetary damages.[17]

On November 11, 2019, Defendants filed their Motion to Dismiss contending that the court lacks subject-matter jurisdiction over Plaintiff's claims.[18] Plaintiff responded on December 20, 2019,[19] and Defendants replied on January 10, 2020.[20]

---

[13]Plaintiff's Original Class Action Complaint, Docket Entry No. 1.

[14]Second Amended Complaint, Docket Entry No. 13.

[15]Id. at 16 ¶ 6.2, 17 ¶ 6.3.

[16]Id. at 19-20 ¶ 7.3.

[17]Id. at 19 ¶ 6.7.

[18]Motion to Dismiss, Docket Entry No. 19, pp. 1, 13.

[19]Plaintiff's Response, Docket Entry No. 24.

[20]Defendants' Reply Brief in Support of Motion to Dismiss Plaintiff's Second Amended Class Action Complaint ("Defendants' Reply"), Docket Entry No. 25.

## II.   Law and Analysis

Defendants contend that the court lacks Article III subject-matter jurisdiction because Plaintiff does not have standing.[21] Defendants argue that Plaintiff has not suffered an injury in fact and that the relief sought will not redress any such injury.[22] Defendants seek dismissal of the action under Federal Rule of Civil Procedure 12(b)(1).[23]

### A.   Legal Standard

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Insurance Company of America, 114 S. Ct. 1673, 1675 (1994).  The burden of establishing federal jurisdiction rests with the party asserting jurisdiction. DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1861 n.3 (2006).  A party may assert the defense of lack of subject-matter jurisdiction in a Rule 12(b)(1) motion.  Fed R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotations omitted).  The court may determine whether it possesses subject-matter jurisdiction over an action by looking to "(1) the

---

[21]Motion to Dismiss, Docket Entry No. 19, p. 13.

[22]Id. at 13, 18-19.

[23]Id. at 6.

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrett Computer Services, Inc. v. PDA, Inc., 884 F.2d 214, 220 (5th Cir. 1989).

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (internal quotations omitted).   One element of the case-or-controversy requirement is that a plaintiff must establish, on the basis of the complaint, standing to sue. Raines v. Byrd, 117 S. Ct. 2312, 2317 (1997) (citing Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136-37 (1992)).   To have standing, "[a] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547 (citing Lujan, 112 S. Ct. at 2136).   "[A] plaintiff must demonstrate standing for each claim [s]he seeks to press" and have "standing separately for each form of relief sought." DaimlerChrysler, 126 S. Ct. at 1867 (internal quotations omitted). The precise requirements for standing depends on "the nature and source of the claim asserted." Warth v. Seldin, 95 S. Ct. 2197, 2206 (1975).   In a class action suit "if none of the named plaintiffs purporting to represent a class establishes the

-6-

requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 94 S. Ct. 669, 675 (1974). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. Spokeo, 136 S. Ct. at 1547 (quoting Warth, 95 S. Ct. at 2215).

**B.    Injury in Fact**

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 112 S. Ct. at 2136). To have standing to seek declaratory or injunctive relief, a plaintiff must demonstrate a real, immediate threat of injury:  "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" City of Los Angeles v. Lyons, 103 S. Ct. 1660, 1665 (1983); see also Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2003) (stating that for a plaintiff to have standing to sue for injunctive or declaratory relief he "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future").

The parties agree that Plaintiff owes an outstanding balance of $963.47 to Defendants for the service charge under the Patient

Contract.  Plaintiff argues that this balance and the fact that it has been sent to a debt collection agency demonstrate an injury in fact.[24]  Defendants offer multiple arguments why the amount billed and owed by Plaintiff is not an injury in fact relevant to this action.

Defendants argue that Plaintiff has not suffered an injury in fact because they disclosed the Service Fee in the Charge Master in accordance with Federal regulations and Texas laws on hospital price disclosures.[25]  But whether Plaintiff's claims will fail given Defendants' compliance with these laws and regulations is not relevant to determining whether she has standing.  See Steel Co. v. Citizens for a Better Environment, 118 S. Ct. 1003, 1010 (1998) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case.").  For the purpose of determining Plaintiff's standing, the court must assume her legal claims have merit.  See North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare, 781 F.3d 182, 191 (5th Cir. 2015).  Assuming that Plaintiff is correct that the Service Fee is unlawful, she would be injured if forced to pay the fee under the Patient Contract.

Defendants argue that the outstanding balance does not satisfy the injury-in-fact requirement because it does not represent a

---

[24]Plaintiff's Response, Docket Entry No. 24, pp. 16-17.

[25]Motion to Dismiss, Docket Entry No. 19, pp. 15-18.

continuous injury or imminent threat of future injury necessary for Plaintiff to seek declaratory and injunctive relief.[26]   But a contractual obligation to pay money incurred is sufficient to establish an injury in fact even when that debt has not been and may never be paid.   See E.M. v. New York City Department of Education, 758 F.3d 442, 458-460 (2d Cir. 2014). And a party to a contract generally has Article III standing to bring claims for declaratory relief related to that contract.   BroadStar Wind Systems Group Limited Liability Co. v. Stephens, 459 F. App'x 351, 356 (5th Cir. 2012).   Accordingly, Plaintiff's obligation to pay the Service Fee under the contract is an actual injury relevant to her claims that the service charge is unconscionable and that Defendants unlawfully induced her to enter the contract in violation of the DTPA.

Defendants argue that the obligation to pay is only a speculative future injury because there is no evidence that Plaintiff will have to pay the debt other than the debt collection agency's notice of intent to collect.[27]   Defendants suggest that Plaintiff may only bring a claim for damages related to this debt, rather than a claim for declarative or injunctive relief.[28]   These arguments lack merit in light of the above-discussed principles. Defendants cite no authority that a party seeking to avoid an

---

[26]Id. at 14.

[27]Defendants' Reply, Docket Entry No. 25, pp. 6-7.

[28]Id. at 6.

-9-

allegedly unlawful obligation under a contract lacks standing to seek declaratory or injunctive relief.  Moreover, in the standing context courts typically do not assume a party is unlikely to enforce a contractual right without conclusive evidence of waiver. See, e.g., E.M., 758 F.3d at 458-59.  Defendants have not argued or provided any evidence that they have waived their right to and will never seek payment of the Service Fee.  The court is persuaded that the bill and the referral of Plaintiff's account to a debt collector is sufficient evidence that the harm imposed by the obligation to pay the fee is not mere conjecture.

Defendants argue that the outstanding balance is not an injury in fact because Plaintiff's insurer's contract with the hospital reduced the fee from $2,208.93 to $963.47.[29]  This argument lacks merit because only the injury's existence, not its magnitude, is relevant to Article III standing.  See United States v. Students Challenging Regulatory Agency Procedures ("SCRAP"), 93 S. Ct. 2405, 2417 n.14 (1973).

The court concludes that the outstanding balance Plaintiff owes Defendants under the Patient Contract satisfies the injury-in-fact requirement for Article III standing.  As Plaintiff has not argued that any other injury in fact applies to her claims, the court will consider only the outstanding balance in determining whether the other elements for standing are met.

---

[29]Id. at 5-6.

-10-

## C.   Redressability

Defendants argue that any injury Plaintiff suffered is not redressable by the declarative and injunctive relief she seeks.[30] Plaintiff must show standing separately for each claim and each form of relief sought.  Because Plaintiff's only injury in fact is the outstanding balance, Plaintiff only has standing to seek relief for which there is "a likelihood that the requested relief will redress the alleged injury."  See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794, 799-800 (5th Cir. 2012).

Plaintiff's requested relief can be divided into two categories:  (1) relief related specifically to the contract and the outstanding balance and (2) relief aimed at restraining Defendants' future conduct.  The first category includes requests for:

- a declaration that the Patient Contract does not authorize the Service Fee;

- a declaration that Plaintiff is not liable for the Service Fee under the Contract;

- declarations that Defendants' practice of charging the Service Fee without prior notice is unconscionable under Texas common law and violates the DTPA;[31] and

_____

[30]Motion to Dismiss, Docket Entry No. 19, pp. 18-19.

[31]Plaintiff's Second Amended Complaint states that she seeks a judgment as to "Defendants' billing practices as they relate to Plaintiff and the Class members."  Reading the complaint as a
(continued...)

-11-

- an injunction against the collection of charges for the Service Fee.[32]

These requests are likely to redress Plaintiff's injury in fact because if granted they would remove her legal obligation to pay the Service Fee, and Defendants could no longer demand that portion of the outstanding balance.

The second category are requests that the court enjoin Defendants from billing or collecting the Service Fee from future emergency room patients - including but not limited to Plaintiff - and from "representing that the Contract authorizes Defendants to charge" the fee.[33]   This requested relief would only affect Defendants' future conduct and would not redress Plaintiff's injury of the outstanding balance.  Because Plaintiff has not argued that there is a substantial risk that she will suffer any future injury from Defendants' future conduct, she does not have standing to seek an injunction affecting that conduct.  See Stringer v. Whitley, 942 F.3d 715, 721 (5th Cir. 2019).

The court concludes that Plaintiff has suffered an injury in fact in the form of the outstanding balance and that some of her

---

[31](...continued)
whole, the court understands the complained-of billing practices to be Defendants' alleged failure to give patients prior notice of the Service Fee and billing for the Service Fee under the Patient Contract.

[32]Second Amended Complaint, Docket Entry No. 13, p. 16 ¶ 6.2, p. 19 ¶ 7.3(a).

[33]Id. at 19-20 ¶¶ 7.3(b)-(d).

requested relief will likely redress the injury.  Defendants do not
dispute that the injury is fairly traceable to their alleged
conduct.  Plaintiff therefore has Article III standing to pursue
her claims as to the validity of the Service Fee that she was
charged.   Plaintiff does not, however, have standing to seek
injunctions affecting Defendants' unrelated future conduct.
Accordingly, the court will grant the Motion to Dismiss only as to
the injunctions sought in paragraphs 7.3(b)-(d) of the Second
Amended Complaint that are aimed at future conduct.

### III.  New Briefing on Class Certification and Jurisdiction

Also pending before the court is Plaintiff's Motion for Class
Certification (Docket Entry No. 27).  The court has granted the
parties leave to file supplemental briefs on that motion, currently
due on June 18, 2020, and July 2, 2020.[34]  The court's ruling that
Plaintiff lacks standing to seek injunctive relief against
Defendants' future conduct, however, may affect issues relevant to
class certification.  Accordingly, the court will deny the motion
for class certification without prejudice and order Plaintiff to
file an amended motion so that class certification may be briefed
in light of this Memorandum Opinion and Order.

Moreover, while the court has concluded that the action should
not be dismissed on the issue of standing, it is not clear that the

---

[34]Order Granting Joint Motion for Leave to File Supplemental
Class Certification Briefs, Docket Entry No. 36.

-13-

court has statutory subject-matter jurisdiction over Plaintiff's claims.   Plaintiff's Second Amended Complaint asserts that the court has jurisdiction under the diversity provisions of the Class Action Fairness Act ("CAFA") because at least one of the Defendants is a citizen of Texas and at least one member of the proposed class is a citizen of another state, and the total amount in controversy exceeds $5,000,000.   See 28 U.S.C. § 1332(d)(2).   But Defendants are citizens of Texas, their hospitals are in Texas, their complained-of conduct occurred in Texas, and Plaintiff asserts only Texas state law claims.[35]   If over two-thirds of Plaintiff's proposed class members are citizens of Texas, it is unlikely that the court has jurisdiction over this action.   See id. § 1332(d)(4) (providing that district courts "shall decline to exercise jurisdiction" under CAFA where over two-thirds of a proposed plaintiff class are citizens of the state where the action is filed and if other requirements are met).   The court will therefore require the parties' briefing on class certification to also address the court's subject-matter jurisdiction.

## IV.   Conclusion and Order

For the reasons explained above, the court concludes that Plaintiff has Article III standing to seek relief for the outstanding balance she owes under her contract with Defendants.

---

[35]Second Amended Complaint, Docket Entry No. 13, pp. 2-3 ¶ 2.2, pp. 3-4 ¶ 2.3, p. 11 ¶¶ 4.13-5.1.

-14-

But Plaintiff does not have standing to seek injunctions against Defendants' for their future conduct unrelated to that obligation. Accordingly, Defendants' Motion to Dismiss (Docket Entry No. 19) is **GRANTED** as to the injunctions sought in Paragraphs 7.3(b)-(d) of Plaintiff's Second Amended Class Action Complaint (Docket Entry No. 13) and is otherwise **DENIED**.

The court's Order Granting Joint Motion for Leave to File Supplemental Class Certification Briefs (Docket Entry No. 36) is **VACATED**, and Plaintiff's Motion for Class Certification (Docket Entry No. 27) is **DENIED WITHOUT PREJUDICE**. Plaintiff is **ORDERED** to file an Amended Motion for Class Certification within fourteen days of the entry of this Memorandum Opinion and Order. The parties' briefs on class certification are **REQUIRED** to address the court's subject-matter jurisdiction.

**SIGNED** at Houston, Texas, on this the 11th day of June, 2020.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-15-